UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

SIGNATURE FLIGHT SUPPORT
LLC,

      **Plaintiff,**

v.                                    **Case No: 5:25-cv-469-GAP-PRL**

ANTHONY CELLA, SONNY LEE, and
RAMZI ALAFANDI,

      **Defendants.**

---

## REPORT AND RECOMMENDATION[1]

This cause, upon referral, comes before the Court on a Motion for Entry of Final Default Judgment and Permanent Injunction filed by Plaintiff Signature Flight Support LLC ("Plaintiff," "Signature," or "SFS"). (Doc. 32). Plaintiff seeks entry of a final default judgment against Defendants Anthony Cella ("Cella"), Sonny Lee ("Lee"), and Ramzi Alafandi ("Alafandi") (collectively, "Defendants"). (*Id.*). Defendants have not responded to the motion or otherwise appeared in this action. For the reasons explained below, I submit that Plaintiff's motion be granted.

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(2); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

## I.    BACKGROUND

Signature operates fixed base operations ("FBOs"), providing general aviation ground support services, including fueling, hangar space, and aircraft grounding, at more than 200 airports around the globe. (Doc. 1 at ¶ 14). In connection with its business, Signature licenses several U.S. registered trademarks (the "SFS Marks") from an affiliate company, Signature Flight Support UK Regions Limited ("Regions"). (*Id*. at ¶¶ 15-16). Regions registered the SFS Marks with the United States Patent and Trademark Office ("USPTO"). (*Id*. at ¶ 15; *see* Doc. 1-2). These marks include, among others, "SIGNATURE," "SIGNATURE FLIGHT SUPPORT," and a script version of "SIGNATURE." (Doc. 1 at ¶ 15; *see* Doc. 1-2). Pursuant to a license agreement, Regions authorized Signature to prosecute any infringement of the SFS Marks. (Doc. 1 at ¶ 17).

In the complaint, Signature alleges that Defendants have engaged in an ongoing scheme to impersonate Signature for purposes of fraudulently obtaining and cashing checks in Signature's name. (*Id*. at ¶¶ 1-2). Signature avers that Defendants have undertaken a conspiracy to imitate Signature by filing false and fraudulent annual reports on behalf of Signature with the Florida Division of Corporations ("FDOC") and misrepresenting themselves as representatives of Signature to induce the Internal Revenue Service ("IRS") to send them checks totaling nearly $3 million for payments due to Signature. (*Id*. at ¶¶ 2, 18-20, 30-31; *see* Doc. 1-3). Defendants have never had the authority to act on behalf of Signature. (Doc. 1 at ¶ 21; *see* Doc. 1-4).

Signature further alleges that Cella and Lee formed Signature Flight Support LLC Signature Plaza ("Plaza") and created a website for Plaza ("Plaza Website"), using one or more of the following domain names: (i) signatureflightplaza.com; (ii) signaturefsllc.com; and

(iii) smilin1945.wixsite.com/signature-flight-s. (Doc. 1 at ¶¶ 22-23; *see* Doc. 1-5). The Plaza Website features a header that encompasses some of the SFS Marks (including Signature's logo), purports to offer services highly similar or identical to those offered by Signature, and lists Defendants as senior leadership of Plaza alongside two real Signature senior leadership members, Amy Alexy and Jim Hopkins, which allegedly suggests that Plaza is part of, or affiliated with, Signature. (Doc. 1 at ¶¶ 24-28).

*SFS Marks*

*Plaza Website*

SERVICING AIRCRAFT FOR OVER 15 YEARS!

Meet The Team

—



**Anthony Cella**
President



**Isabell Silva**
Snr Vice President
Tax Refunds, Payments & Investments



**Amy Alexy**
Chief People Officer



**Ramzi Alafandi**
Vice President / Chief Financial Officer



**Jim Hopkins**
Sr. Vice President,
Airport Relations & Strategic Programs

**Sonny Lee**
CEO / Director / Manager

Signature contends that its counsel sent cease and desist letters to Defendants regarding their wrongful activities and impersonation of Signature. (*Id*. at ¶ 33). Signature received no response and claims that Defendants have refused to stop their scheme. (*Id*. at ¶ 34).

As a result of Defendants' alleged actions, Signature asserts claims for (1) trademark infringement (Count I); (2) false designation of origin (Count II); (3) cybersquatting (Count III); (4) conversion (Count IV); and (5) conspiracy (Count V). (*Id*. at pp. 7-13). Plaintiff seeks injunctive relief and monetary damages. (*Id*. at ¶¶ 44, 52, 59, 65, 71).

Simultaneously with the filing of the complaint, Signature moved for a temporary restraining order ("TRO") by filing an *Ex Parte* Motion for TRO. (Doc. 2). Signature's Motion for TRO sought to enjoin Defendants from continuing to use the SFS Marks, falsely misrepresenting themselves as agents or representatives of Signature before third parties, directing Defendants to notify third parties of their misrepresentations, directing Defendants to dissolve Plaza, and prohibiting Defendants from submitting any documents on behalf of Signature to the FDOC. (*See id*. at pp. 20-21).

On July 29, 2025, the Court issued a TRO pending the issuance of a preliminary injunction. (Doc. 10). On August 12, 2025, the Court converted the TRO into a preliminary injunction. (Doc. 20). In its Order, the Court temporarily enjoined and restrained Defendants from: (1) "using the terms 'SIGNATURE,' 'SIGNATURE FLIGHT SUPPORT,' and any stylized versions thereof in connection with any actual or purported activity"; (2) "adopting the SFS Marks, as listed in Doc 1-1, or any mark confusingly similar to the SFS Marks in connection with any actual or purported activity"; (3) "falsely representing themselves or any of their affiliates to any third party as an agent or representative of SFS, affiliated with SFS, having any authority over SFS, or otherwise being related in any way to SFS"; and (4) "submitting any documents to the Florida Division of Corporations ('FDOC') or Internal Revenue Service ('IRS') purported to be by, for, or on behalf of, SFS (other than the submission of documents to dissolve Plaza)." (*Id.* at p. 2).

Signature served Cella (Doc. 17; Doc. 17-1) and Lee (Doc. 15; Doc. 15-1) on August 1, 2025, and Alafandi (Doc. 22) on August 26, 2025. Defendants failed to file an answer or otherwise respond to the complaint. Signature moved for a clerk's entry of default against Cella and Lee (Doc. 23) on September 9, 2025, and Alafandi (Doc. 26) on October 9, 2025.

The Clerk entered default against Cella and Lee (Doc. 25) on September 30, 2025, and Alafandi (Doc. 27) on October 9, 2025.

Plaintiff now moves the Court to grant final default judgment against Defendants pursuant to Federal Rule of Civil Procedure 55(b)(2). (Doc. 32). Plaintiff requests injunctive relief, nominal damages, and an award of attorney's fees. (*Id.* at pp. 20-21).

## II.    LEGAL STANDARDS

Under Federal Rule of Civil Procedure 55(b)(2), a court may enter a default judgment against a party who has failed to respond to a complaint or otherwise defend. *See* Fed. R. Civ. P. 55(b)(2); *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1134 (11th Cir. 1986). The entry of default constitutes an admission by the defaulted defendant of the well-pleaded allegations of fact in the complaint. *See Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (per curiam) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *Cotton v. Mass. Mut. Lif Ins. Co.*, 402 F.3d 1267, 1277-78 (11th Cir. 2005). However, a defendant's default "does not in itself warrant . . . entering a default judgment." *See Goldman v. HSBC Bank USA, Nat'l Ass'n*, No. 13-81271-CIV, 2015 WL 1782241, at *1 (S.D. Fla. Mar. 24, 2015) (quoting *Nishimatsu Constr. Co.*, 515 F.2d at 1206); *Tyco Fire & Sec., LLC*, 218 F. App'x at 863 ("[A] default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover[.]").

Because a defaulted defendant is not held to admit facts not well pleaded or to admit conclusions of law, the Court must first determine whether there is a sufficient basis in the pleadings to support entry of judgment. *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam); *Cotton*, 402 F.3d at 1278; *see also Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore

established by the entry of default[.]") (citation omitted). When evaluating the sufficiency of the alleged facts, a court looks to see whether the complaint contains sufficient factual matter that, when accepted as true, states a claim for relief that is plausible on its face. *See Surtain*, 789 F.3d at 1245 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Tyco Fire & Sec., LLC*, 218 F. App'x at 863 (stating that the court "must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought").

Once a plaintiff has established a sufficient basis for liability, the court must conduct an inquiry to determine the appropriate damages. *See PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004); *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1543-44 (11th Cir. 1985). A court need not conduct an evidentiary hearing when "additional evidence would be truly unnecessary to a fully informed determination of damages." *See Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 746 (11th Cir. 2017) (per curiam) (quoting *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005)); *Armadillo Distribution Enters., Inc. v. Hai Yun Musical Instruments Manuf. Co.*, 142 F. Supp. 3d 1245, 1255 (M.D. Fla. 2015) (stating that "a hearing is not required or mandatory if sufficient evidence is submitted to support the claimed damages") (citation omitted). Accordingly, where the record adequately supports the award of damages, an evidentiary hearing is not required. *See PetMed*, 336 F. Supp. 2d at 1217; *Smyth*, 420 F.3d at 1232 n.13.

### III.   DISCUSSION

#### A. Jurisdiction

Before addressing the merits of the claims, the Court must consider whether it has subject-matter jurisdiction and personal jurisdiction over the Defendants. *See Winfield Sols., LLC v. DeAngelo Bros.*, LLC, No. 3:21-cv-1280-BJD-LLL, 2022 WL 3136840, at *1-3 (M.D. Fla. July 1, 2022), *report and recommendation adopted*, *Winfield Sols., LLC v. DeAngelo Bros.*, LLC, 2022 WL 3646084 (M.D. Fla. Aug. 8, 2022).

First, the Court has subject matter jurisdiction over this case. The Court has federal question jurisdiction over Counts I, II, and III of the complaint pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Counts IV and V pursuant to 28 U.S.C. § 1367. (*See* Doc. 1 at ¶ 11).

Second, the Court has personal jurisdiction over the Defendants. Cella is a Florida resident subject to the jurisdiction of this Court. (*See id*. at ¶ 6). Lee and Alafandi, who are nonresidents (*see id*. at ¶¶ 7, 9), are also subject to this Court's jurisdiction because their wrongful acts were aimed at the state of Florida and towards Signature, a Florida resident (*See id*. at ¶ 5). *See Licciardello v. Lovelady*, 544 F.3d 1280, 1285-88 (11th Cir. 2008); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013).

#### B. Liability

##### i.    Count I – Trademark Infringement

In Count I, Plaintiff alleges a claim for trademark infringement against Defendants under 15 U.S.C. § 1114(1). (Doc. 1 at ¶¶ 35-44). To prevail on a trademark infringement claim under the Lanham Act, a plaintiff must show that (1) "it had prior rights to the mark at issue" and (2) "the defendant had adopted a mark or name that was the same, or confusingly similar

to its mark, such that consumers were likely to confuse the two." *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citations and footnote omitted). For the second element, courts consider the following factors when determining the likelihood of confusion: (1) "the strength of the plaintiff's mark"; (2) "the similarity between the plaintiff's mark and the allegedly infringing mark"; (3) "the similarity between the products and services offered by the plaintiff and defendant"; (4) "the similarity of the sales methods"; (5) "the similarity of advertising methods"; (6) "the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark"; and (7) "actual confusion." *See Alliance Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000) (citation omitted).

The well-pleaded factual allegations of Plaintiff's complaint state a plausible claim for trademark infringement. Regions registered the SFS Marks with the USPTO (*see* Doc. 1 at ¶ 15), as evidenced by the registration certificates attached to Plaintiff's complaint (*see* Doc. 1-2), making the marks valid and distinctive, and affording priority rights to Regions as the registrant. *See Tana v. Dantanna's*, 611 F.3d 767, 780 (11th Cir. 2010) ("[F]ederal registration affords the registrant priority over all future users of confusingly similar marks.") (citations omitted); *Sound Surgical Techs., LLC v. Rubinstein*, 734 F. Supp. 2d 1262, 1269 (M.D. Fla. 2010) ("Plaintiff's registration certificate constitutes prima facie evidence of its validity, [p]laintiff's ownership of the mark, and [p]laintiff's exclusive right to use the mark in connection with the goods or services specified in the certificate.") (citations omitted). Pursuant to a licensing agreement, Regions licensed the SFS Marks to Plaintiff, who uses them in connection with operating its FBOs, and authorized Plaintiff to prosecute infringement of the SFS Marks on

Regions' behalf. (*See* Doc. 1 at ¶¶ 16-17, 37); *Planetary Motion, Inc.*, 261 F.3d at 1195 (holding prior use of a mark creates a right in the user of that mark).

As to the second element, Plaintiff has established that Defendants adopted highly similar or identical marks that would likely lead to consumer confusion. Defendants used the entirety of several SFS Marks, including the stylized script "SIGNATURE" and the word mark "SIGNATURE FLIGHT SUPPORT" on the Plaza Website, where Defendants represent that they offer services similar to those of Plaintiff. (*See* Doc. 1 at ¶¶ 24-25, 39). Although some of the marks on the Plaza Website include the word "PLAZA," Defendants' actions are likely to cause consumer confusion or mistake that Defendants' businesses are associated with, or part of, the Plaintiff. (*See* Doc. 1 at ¶¶ 25, 40-41); *Frehling Enters. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1337 (11th Cir. 1999) (holding that when one mark incorporates all or part of the other, there is a strong likelihood of confusion). Additionally, Defendants' actions to impersonate Signature and defraud the IRS demonstrate ill intent. (*See* Doc. 1 at ¶¶ 39, 44). As a result of Defendants' conduct, the IRS issued checks to Cella and Lee that were owed to Plaintiff. (*See id.* at ¶¶ 30-31, 42).

Based upon the foregoing, Plaintiff is entitled to a default judgment against Defendants on its trademark infringement claim.

### ii.    Count II – False Designation of Origin

In Count II, Plaintiff alleges a claim for false designation of origin against Defendants under 15 U.S.C. § 1125(a). (Doc. 1 at ¶¶ 45-52). The showing for a false designation of origin claim is the same as that for a trademark infringement claim. *See Chanel, Inc. v. Besumart.com*, 240 F. Supp. 3d 1283, 1289 (S.D. Fla. 2016) ("The test for liability for false designation of origin under 15 U.S.C. [§] 1125(a) is the same as for a trademark . . . infringement claim—

*i.e.*, whether the public is likely to be deceived or confused by the similarity of the marks at issue.") (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992)); *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1503-04 (11th Cir. 1985) ("The factors relevant to establishing [false designation of origin] are identical to the factors relevant to establishing a likelihood of confusion with respect to trademark infringement under 15 U.S.C. § 1114."); *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994) (per curiam) ("The same set of facts enabling [plaintiff] to prevail under Section 1114(a)(1) will result in recovery pursuant to Section 1125.") (citation omitted).

Because Plaintiff has sufficiently pleaded a trademark infringement claim, Plaintiff's false designation of origin claim is also satisfied. Accordingly, Plaintiff is entitled to a default judgment against Defendants on its false designation of origin claim.

### iii.    Count III – Cybersquatting

In Count III, Plaintiff alleges violations of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), against Defendants. (Doc. 1 at ¶¶ 53-59). "The ACPA was enacted to prevent cybersquatting[,]" which is "essentially extortion." *See Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 775 (11th Cir. 2015) (citing *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1246 (11th Cir. 2009)). Cybersquatting can occur "when the cybersquatter intend[s] to profit by diverting customers from the website of the trademark owner to the defendant's own website, where those consumers would purchase the defendant's products or services instead of the trademark owner's." *See id*. (citation and internal quotation marks omitted). Therefore, "[i]n a sense, the cybersquatter muddies the clear pool of the trademark owner's goodwill and then profits off the resulting murkiness." *Id*.

To prevail on a cybersquatting claim, a plaintiff must show that a defendant (1) "registered the domain name"; (2) "that the domain name was identical or confusingly similar to its trademark that was distinctive at the time of registration"; and (3) "that the domain name was registered in bad faith." *See id*. at 778 (citing 15 U.S.C. § 1125(d)). A court may consider nine factors[2] when determining whether a defendant has the requisite "bad faith intent." *See id*. However, "[a] court's analysis of whether a defendant had the bad faith intent to profit necessary to a cybersquatting claim is not based on a score card of the statutory factors. . . . No particular number of those factors requires a finding of a bad faith intent to profit." *Pensacola Motor Sales Inc. v. Eastern Shore Toyota, LLC*, 684 F.3d 1211, 1223 (11th Cir. 2012) (quoting *S. Grouts & Mortars, Inc.*, 575 F.3d at 1249).

The well-pleaded factual allegations of Plaintiff's complaint state a plausible claim for cybersquatting. As noted above, Regions registered the SFS Marks with the USPTO, and by virtue of being registered with the USPTO, the SFS Marks are valid and distinctive. (*See* Doc. 1 at ¶¶ 15, 54; Doc. 1-2). Plaintiff has shown that Defendants' domain names (signatureflightplaza.com, signaturefsllc.com, and smilin1945.wixsite.com/signature-flight-

---

[2] Those nine factors include: (1) "[w]hether the defendant has a trademark or other intellectual property rights in the domain name"; (2) "[w]hether the domain name refers to the legal name of the defendant"; (3) "[w]hether the defendant ever used the domain name in connection with the bona fide offering of any goods or services"; (4) "[w]hether the defendant has a bona fide noncommercial or fair use of the mark in a site accessible under the domain name"; (5) "[w]hether the defendant has an intent to divert consumers' from the mark owner's website to his own, either for commercial gain or with intent to tarnish or disparage the mark, when that diversion could cause harm to the mark owner's goodwill"; (6) "[w]hether the defendant offers to transfer or sell the domain name for financial gain when he has not used or had an intent to use the domain name in connection with the bona fide offering of any goods or services"; (7) "[w]hether the defendant provides material and misleading false contact information when applying for the registration of the domain name or the defendant intentional[ly] fail[s] to maintain accurate contact information"; (8) "[w]hether the defendant acquired multiple domain names that the defendant knows are identical or confusingly similar to distinctive marks"; and (9) "[w]hether the mark is distinctive or famous." *See id*. at 775-76 (citing 15 U.S.C. § 1125(d)(1)(B)(i)) (internal quotation marks omitted).

s) are confusingly similar to the SFS Marks. (*See* Doc. 1 at ¶¶ 23, 56); *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 205 (6th Cir. 2004) ("Courts generally have held that a domain name that incorporates a trademark is confusingly similar to that mark if consumers might think that [the domain name] is used, approved, or permitted by the mark holder.") (citation and internal quotation marks omitted). Even though there are minor variations, Defendants' domain names all contain a part, or the entirety, of the SFS Marks. *See Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1351 (S.D. Fla. 2001) (explaining that "[t]he taking of an identical copy of another's famous and distinctive trademark for use as a domain name creates a presumption of confusion among Internet users as a matter of law" and that the "addition of generic or minor words to a trademark, especially a famous trademark, notwithstanding the positioning of the words, does nothing to abate likely confusion or dilutive effect") (citations omitted).

Further, Plaintiff has shown that Defendants possessed the requisite bad faith intent. Defendants registered the Plaza Website and used confusingly similar domain names with the intent to profit from the SFS Marks by diverting potential customers seeking Plaintiff's services to Defendants' websites. (*See* Doc. 1 at ¶¶ 28, 56-57); *see also Pensacola Motor Sales Inc.*, 684 F.3d at 1223. Thus, Plaintiff is entitled to a default judgment against Defendants on its cybersquatting claim.

### iv.    Count IV – Conversion

In Count IV, Plaintiff alleges a claim for conversion against Cella and Lee under Florida law. (Doc. 1 at ¶¶ 60-65). Florida law defines the tort of conversion as "the wrongful exercise of dominion or control over property to the detriment of the rights of one entitled to possession." *See United States v. Bailey*, 288 F. Supp. 2d 1261, 1269 (M.D. Fla. 2003), *aff'd*, 419

F.3d 1208 (11th Cir. 2005) (citing *Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead*, 162 F.3d 1101, 1108 (11th Cir. 1998)); *Burger King Corp. v. Austin*, 805 F. Supp. 1007, 1012 (S.D. Fla. 1992) ("[C]onversion is an unauthorized act which deprives another of his property permanently or for an indefinite time. It is the disseisin of the owner or an interference with legal rights which are incident to ownership, such as the right to possession.") (citation omitted).

The elements of conversion under Florida law are (1) "an act of dominion wrongfully asserted"; (2) "over another's property"; and (3) "inconsistent with his ownership therein." *See Joe Hand Promotions, Inc. v. Creative Enter., LLC*, 978 F. Supp. 2d 1236, 1241 (M.D. Fla. 2013) (citation omitted). To establish a conversion claim, "one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." *See Indus. Park Dev. Corp. v. Am. Exp. Bank, FSB*, 960 F. Supp. 2d 1363, 1366 (M.D. Fla. 2013) (citing *Edwards v. Landsman*, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011)); *see also Bailey*, 288 F. Supp. 2d at 1271 ("To maintain the [conversion] action, a plaintiff must establish possession or an immediate right to possession in the property at the time of the conversion.") (citations omitted).

The well-pleaded factual allegations of Plaintiff's complaint state a plausible claim for conversion. Plaintiff alleges that both Cella and Lee fraudulently obtained tax refund checks that it was owed from the IRS. (*See* Doc. 1 at ¶¶ 30-31, 61-62). Cella and Lee then each attempted to deposit those checks into bank accounts unaffiliated with Plaintiff. (*See id.* at ¶¶ 32, 64). Both Cella and Lee had no legal right to the checks, and Plaintiff did not otherwise authorize them to possess or deposit those checks into a bank account. (*See id.* at ¶ 64); *Crystal Photonics, Inc. v. Gray*, No. 6:21-cv-529-GAP-EJK, 2021 WL 3293524, at *1-2 (M.D. Fla. July 16, 2021), *report and recommendation adopted*, 2021 WL 3288106 (M.D. Fla. Aug. 2, 2021)

(finding that plaintiff adequately alleged a conversion claim, where plaintiff had alleged that it was the rightful owner of certain funds that it was owed and that defendant wrongfully asserted dominion over those funds when the funds were fraudulently delivered to defendant's bank account). Accordingly, Plaintiff is entitled to a default judgment against Cella and Lee on its conversion claim.

### v.   Count V – Conspiracy

In Count V, Plaintiff alleges a claim for civil conspiracy against Defendants under Florida law. (Doc. 1 at ¶¶ 66-71). "Generally, an actionable conspiracy requires an actionable underlying tort or wrong. . . . However, an alternative basis for a civil conspiracy claim exists where the plaintiff can show some 'peculiar power of coercion' possessed by the conspirators by virtue of their combination, which an individual acting alone does not possess." *See Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla 5th DCA 2006) (citations omitted). A civil conspiracy "is not a separate or independent tort[,] but is a vehicle for imputing the tortious acts of one coconspirator to another to establish joint and several liability." *See Lorillard Tobacco Co. v. Alexander*, 123 So. 3d 67, 80 (Fla. 3d DCA 2013) (citation omitted). "To be held liable for the acts of all co-conspirators, each co-conspirator 'need only know of the scheme and assist in it in some way.'" *Principal Life Ins. Co. v. Mosberg*, No. 09-22341-CIV, 2010 WL 473042, at *5 (S.D. Fla. Feb. 5, 2010) (quoting *Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987)).

The elements for civil conspiracy under Florida law include: (1) an agreement "between two or more parties"; (2) "to do an unlawful act or to do a lawful act by unlawful means"; (3) "the doing of some overt act in pursuance of the conspiracy"; and (4) "damage to plaintiff as a result of the acts done under the conspiracy." *See Parisi v. Kingston*, 314 So. 3d

656, 661 (Fla. 3d DCA 2021); *In re Harris*, 3 F.4th 1339, 1350–51 (11th Cir. 2021) (citing *Walters*, 931 So. 2d at 140). "[A] claim for civil conspiracy must contain clear, positive[,] and specific allegations; general allegations of conspiracy are not sufficient." *See Parisi*, 314 So. 3d at 661 (citing *World Class Yachts, Inc. v. Murphy*, 731 So. 2d 798, 799 (Fla. 4th DCA 1999)).

The well-pleaded factual allegations of Plaintiff's complaint state a plausible claim for civil conspiracy. Plaintiff alleges that Defendants agreed to commit and took part in specific unlawful acts, including trademark infringement, false designation of origin, cybersquatting, and conversion.[3] (*See* Doc. 1 at ¶ 67). Plaintiff has established that Defendants engaged in several overt acts in furtherance of the conspiracy, such as registering Plaza with the FDOC, creating the Plaza Website,[4] filing false and fraudulent annual reports with the FDOC, and fraudulently obtaining checks that rightfully belonged to Plaintiff. (*See id.* at ¶ 19, 22-23, 30-31, 68-70). As a result of Defendants' actions taken during the conspiracy, Plaintiff alleges that it has been damaged in the form of lost funds and to its trademark rights. (*See id.* at ¶ 71). Thus, Plaintiff is entitled to a default judgment against Defendants on its conspiracy claim. *See, e.g.*, *Rustik Haws, LLC v. Identiga Sols. Co.*, No. 8:21-cv-00565-MSS-AEP, 2025 WL 470225, at *9 (M.D. Fla. Feb. 12, 2025) (finding plaintiff entitled to a default judgment against all defendants for engaging in a civil conspiracy).

---

[3] Plaintiff's conversion claim was asserted against Cella and Lee, not Alafandi.

[4] Tellingly, on the Plaza Website, each defendant—Cella, Lee, and Alafandi—was listed as holding senior leadership positions at Plaza. (*See id.* at ¶ 26).

## C. Remedies

As for relief, Plaintiff requests injunctive relief, nominal damages, and an award of attorney's fees in the motion. (Doc. 32 at pp. 20-21; *see* Doc. 1 at ¶¶ 44, 52, 59, 65, 71).

### i.   Permanent Injunction

Plaintiff requests entry of a permanent injunction against Defendants to prevent further infringement of the SFS Marks. (Doc. 32 at pp. 14-18). The Court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." *See* 15 U.S.C. § 1116(a).

A plaintiff seeking a permanent injunction must show that it has (1) "suffered an irreparable injury"; (2) "remedies available at law, such as monetary damages, are inadequate to compensate for that injury"; (3) "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) "the public interest would not be disserved by a permanent injunction." *See Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). As to the first two elements, "[t]he Eleventh Circuit has noted that trademark infringement by its nature often results in irreparable harm and that there is generally no adequate remedy at law." *See Bioclin BV v. Multygyn USA, LLC*, 72 F. Supp. 3d 1288, 1296 (M.D. Fla. 2014) (citing *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989)); *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005) (per curiam) ("[G]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. Irreparable injury can also be based upon the possibility of confusion.") (citation

omitted); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) ("[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . [a] substantial threat of irreparable harm.") (citations omitted).

Given Defendants' liability for their infringement of the SFS Marks, which Defendants continue to infringe, it seems that, absent an injunction, Defendants will continue to use those marks. Legal remedies are inadequate when, as here, the Defendants' conduct has led to the loss of goodwill, lost profits, or loss of control of one's business reputation. *See Ferrelgas Partners, L.P.*, 143 F. App'x at 190-91; *see also BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005). Further, as Defendants have not participated in this action, they have not presented any hardships for the Court to consider. Nevertheless, Defendants will face no hardship if they are prohibited from engaging in the illegal act of infringing upon the SFS Marks. Finally, "the public interest relevant to the issuance of a permanent injunction is the public's interest in avoiding unnecessary confusion." *See Angel Flight of Georgia, Inc.*, 522 F.3d at 1209 (citations omitted). As such, the issuance of a permanent injunction enjoining Defendants from using the SFS Marks or holding themselves out as agents or representatives of Plaintiff before third parties in the marketplace would avoid unnecessary confusion and is therefore not adverse to the public interest.

For these reasons, the undersigned recommends that Plaintiff's request for the entry of a permanent injunction against Defendants be granted.

### ii.   Nominal Damages

Plaintiff requests that it be awarded nominal damages of $1 against Cella, Lee, and Alafandi, jointly and severally, as to its conversion and conspiracy claims. (Doc. 32 at pp. 12-13, 21). A nominal damages award of $1 is proper when no actual damages have been proven.

*See Rooney v. Skeet'r Beat'r of Sw. Fla.*, 898 So. 2d 968, 970 (Fla. Dist. Ct. App. 2005) (stating that the court should award nominal damages if compensatory damages are not proven); *Whitfield v. Thompson*, 165 F. Supp. 3d 1227, 1238 n.4 (S.D. Fla. 2016) (noting "nominal damages do not generally exceed one dollar"); *State, Dep't of Corr. v. Niosi*, 583 So. 2d 441, 441 (Fla. Dist. Ct. App. 1991) (per curiam) (awarding nominal damages in a sum not to exceed $1); *see also King v. Saucier*, 356 So. 2d 930, 931 (Fla. 2d DCA 1978) ("[T]he general rule in this state is that where a plaintiff shows the invasion of a legal right, he may recover at least nominal damages."). "[W]here all elements of a conversion claim are present, but there are no actual damages, nominal damages are available." *Grandis v. BGIS Glob. Integrated Sols. US, LLC*, No. 22-61477, 2024 WL 3301200, at *4 (S.D. Fla. Apr. 26, 2024) (citations omitted); *see King*, 356 So. 2d at 931 (finding that the trial court improperly dismissed plaintiff's conversion claim for failure to prove compensatory or punitive damages because plaintiff was still entitled to "at least nominal damages" by demonstrating elements of a conversion claim).

Under Florida law, "codefendants can be held jointly liable for conversion." *See Taubenfeld v. Lasko*, 324 So. 3d 529, 544 (Fla. Dist. Ct. App. 2021). Moreover, "the allegations of conspiracy permit the plaintiff to hold each conspirator jointly liable for the actions of coconspirators." *See Tejera v. Lincoln Lending Servs., LLC*, 271 So. 3d 97, 103 (Fla. 3d DCA 2019); *Lorillard Tobacco Co.*, 123 So. 3d at 80 (stating that the existence of a conspiracy "imput[es] the tortious acts of one coconspirator to another to establish joint and several liability"); *see, e.g.*, *Credendo-Short-Term Non-Eu Risks v. Arriola*, No. 23-24258-CV, 2025 WL 2719950, at *3-4, 8 (S.D. Fla. Sept. 5, 2025), *report and recommendation adopted*, 2025 WL 3282531 (S.D. Fla. Sept. 16, 2025) (entering final default judgment against seven defendants, jointly and severally, for fraud and conspiracy to commit to fraud).

As noted above, Plaintiff satisfied the elements of conversion and civil conspiracy. No actual damages have been shown because, as Plaintiff indicates, any attempts to convert the funds failed, and "there is no reliable method to quantify the damages to Signature from ongoing use of its name to commit fraud against the U.S. government, among other fraudulent acts." (*See* Doc. 1 at ¶ 32; Doc. 32 at p. 11-12, 15); *Gamma Dev. Corp. v. Steinberg*, 621 So. 718, 719 (Fla. 4th DCA 1993) (holding that nominal damages were available to plaintiff whose converted funds were returned, resulting in no actual damages); *Grandis*, 2024 WL 3301200, at *4 (determining that plaintiff was entitled to nominal damages where the defendant did not dispute that plaintiff met the elements of a conversion claim). While Plaintiff did not expressly request nominal damages in the complaint, but instead, sought "damages" and "any other relief the Court deems just and proper" (Doc. 1 at ¶¶ 65, 71), the Eleventh Circuit "is strongly on the side of awarding nominal damages where the complaint repeatedly requests an award of *any damages*[.]" *See Kipu Sys. LLC v. ZenCharts LLC*, No. 17-24733-CIV, 2020 WL 6927659, at *5 (S.D. Fla. Mar. 3, 2020) (holding that plaintiff, on a motion for entry of default judgment, sought nominal damages when the complaint requested "any and all applicable damages" and "[c]ompensatory and other damages allowed by law") (emphasis added), *report and recommendation adopted*, 2020 WL 6914605 (S.D. Fla. Nov. 24, 2020); *see also Spanakos v. Aronson*, No. 17-80965-CV, 2020 WL 13533312, at *1 (S.D. Fla. Mar. 20, 2020) (granting plaintiff's motion for final default judgment in a patent infringement suit, and awarding only nominal damages to plaintiff, despite the complaint seeking monetary damages and injunctive relief).

Accordingly, the undersigned recommends that Plaintiff be awarded nominal damages of $1 against Defendants, jointly and severally.

### iii.   Attorney's Fees

Plaintiff seeks an award of attorney's fees under the Lanham Act and asks the Court to find that it is entitled to such an award. (Doc. 32 at pp. 18-19, 21). The Lanham Act permits an award of reasonable attorney's fees to the prevailing party in "exceptional" cases in trademark infringement actions. *See* 15 U.S.C. § 1117(a). An "exceptional case" is one that "'stands out from others,' either based on the strength of the litigating positions or the manner in which the case was litigated." *See Tobinick v. Novells*, 884 F.3d 1110, 1118 (11th Cir. 2018) (quoting *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). In deciding whether a case is "exceptional," courts consider the totality of the circumstances, including "frivolousness, motivation, objective unreasonableness (both in factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *See Octane Fitness, LLC*, 572 U.S. at 554, 554 n.6 (citation omitted). "There is no precise rule or formula for making these determinations," and courts have broad discretion in finding what constitutes an "exceptional case." *See id.* (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)); *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1319-20 (11th Cir. 2001) ("Although a case may rise to the level of exceptionality, the decision to grant attorney fees remains within the discretion of the trial court.") (citation omitted).

Based on the admitted allegations in this case, that Defendants used and adopted marks identical to the SFS Marks, which are federally registered marks, is substantively strong. Given the substantive strength of Plaintiff's position, and considering the incontestable nature of the trademarks, Plaintiff's previous attempts to give notice to Defendants regarding their conduct, Defendants' false misrepresentations as agents or representatives of Plaintiff,

and Defendants' impersonation of Plaintiff to defraud the United States government, this is an exceptional case under the Lanham Act.

For the foregoing reasons, the undersigned finds that this action is an exceptional case that entitles Plaintiff to an award of reasonable attorney's fees under the Lanham Act. As such, Plaintiff should be ordered to file a motion addressing the amount of fees to be awarded.

## IV.    RECOMMENDATION

Accordingly, it is **respectfully recommended** that:

(1) Plaintiff's Motion for Entry of Final Default Judgment and Permanent Injunction (Doc. 32) be **GRANTED**.

(2) The Clerk be **DIRECTED** to enter the final default judgment against Defendants Anthony Cella, Sonny Lee, and Ramzi Alafandi as follows:

    a. Defendants Anthony Cella and Sonny Lee are liable for the causes of action alleged in Counts I, II, III, IV, and V of the complaint. Defendant Ramzi Alafandi is liable for the causes of action alleged in Counts I, II, III, and V of the complaint.

    b. Defendants Anthony Cella, Sonny Lee, and Ramzi Alafandi are permanently enjoined and restrained from:

        i. Using or adopting the SFS Marks or any mark confusingly similar to the SFS Marks, including any use of the words "SIGNATURE" or "SIGNATURE FLIGHT SUPPORT"; and

        ii. Falsely representing themselves or any of their affiliates to any third party as an agent or representative of Signature, affiliated with

Signature, having any authority over Signature, or otherwise being related in any way to Signature.

c. Defendants Anthony Cella, Sonny Lee, and Ramzi Alafandi are ordered to:

    i. Within 30 days of the entry date of the district judge's order, affirmatively notify any third party to whom the defendant has made a false representation that such defendant is an agent or representative of Signature Flight Support LLC, affiliated with Signature Flight Support LLC, has any authority over Signature Flight Support LLC, or is otherwise related in any way to Signature Flight Support LLC, that such representation is false and should not be relied upon for any reason; and

    ii. Within 30 days of the entry date of the district judge's order, provide Signature Flight Support LLC a list, in writing, of all such persons notified by such defendant pursuant to the injunction.

d. Plaintiff is awarded nominal damages of $1 against Defendants Anthony Cella, Sonny Lee, and Ramzi Alafandi, jointly and severally.

e. Plaintiff is entitled to recover its reasonable attorney's fees pursuant to 15 U.S.C. § 1117(a).

f. The Court will retain jurisdiction over the case to determine the amount of attorney's fees to which Plaintiff is entitled.

(3) Plaintiff be **ORDERED** to file its motion for attorney's fees with supporting evidence within 14 days of the entry date of the district judge's order.

Case 5:25-cv-00469-GAP-PRL    Document 37    Filed 05/01/26    Page 24 of 24 PageID 413

(4) The Clerk be **directed** to close the file.

**Recommended** in Ocala, Florida on May 1, 2026.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy